UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**PETER WHYTE,**

 Petitioner,

v.                Case No. 12-CV-486

**DAN WINKLESKI,**

 Respondent.

---

**DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

---

  Peter Whyte, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket # 23.) Whyte was convicted of second-degree intentional homicide and sentenced to sixty years in prison, consisting of forty years of initial confinement followed by twenty years of extended supervision. (*Id.* at 2.) Whyte alleges that his conviction and sentence are unconstitutional. For the reasons below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

  As summarized by the Wisconsin Court of Appeals, the State charged Whyte with first-degree intentional homicide arising from the August 20, 2006 stabbing death of his long-time girlfriend, Suzanne Weiland. (*State of Wisconsin v. Whyte*, Appeal No. 2009AP1245-CR ¶ 2 (Wis. Ct. App. Oct. 26, 2010), Docket # 31-5.) The doctor who performed Weiland's autopsy testified that Weiland, who was 5'7" tall and weighed 150 pounds, had a blood alcohol concentration of 0.31% at the time of her death. (*Id.* ¶ 2.) Weiland had suffered nineteen knife injuries, several of which were significant enough to have caused her death if

left untreated. (*Id.*) Three of the deep stab wounds were to her neck and would have caused death within minutes of their infliction. (*Id.*) The doctor opined that Weiland died from exsanguination due to multiple stab wounds. (*Id.*)

Whyte, who was 6'4" tall and weighed 283 pounds, testified he had been involved with Weiland since 1986, living together on and off throughout their relationship. (*Id.* ¶ 3.) According to Whyte, Weiland had a history of staying out all night without him and coming home intoxicated. (*Id.*) Whyte testified that on three occasions in the month leading up to Weiland's death, she came home intoxicated and said she wanted to kill Whyte. (*Id.*) The next morning, however, she acted as if nothing had happened. (*Id.*)

On the night of August 20, 2006, the couple returned home after an evening of drinking and Weiland became angry when Whyte declined to have sex. (*Id.* ¶ 4.) Whyte consequently took a walk outside for approximately twenty to forty minutes. (*Id.*) Whyte testified that shortly after he returned home, Weiland came at him with a knife and stabbed him. (*Id.*) Whyte further claimed that when he indicated he needed to go to the hospital, Weiland said, "We are going to see Ash"—Weiland's dog that had been euthanized earlier that year. (*Id.*) Weiland then attacked Whyte again, stabbing him in the stomach. (*Id.*) At that point, Whyte grabbed the knife and knocked Weiland back with his elbow. (*Id.*) As Whyte pulled the knife out of his belly, Weiland stated, "I am going to kill you." (*Id.*) Weiland then came at Whyte with a butcher knife in her right hand. (*Id.*) Whyte grabbed Weiland's hand and, as she started to turn, Whyte stabbed her twice in the back. (*Id.*)

The couple struggled to the floor, each with a knife. (*Id.* ¶ 5.) Whyte testified that as they struggled, he began stabbing Weiland and continued until she stopped struggling. (*Id.*) Whyte indicated he was afraid for his life and believed Weiland intended to kill him. (*Id.*)

Whyte further testified that he was badly wounded and having trouble breathing. (*Id.*) He ultimately passed out and when he awoke, Weiland was dead next to him. (*Id.*) Whyte testified that he "freaked out" and attempted to kill himself by cutting across his wrists. (*Id.*) He then walked out of the house to the pier and, after thinking of his son, returned home. (*Id.*) Whyte indicated he passed out a second time and when he awoke, he crawled over to Weiland's body where he passed out again. (*Id.*) Upon waking, he moved to a family room recliner and called emergency personnel. (*Id.*) A surgeon who treated Whyte testified he suffered several knife wounds to his chest and abdomen, causing injuries to his lungs, stomach, liver, and spleen. (*Id.*)

Whyte did not dispute that Weiland died as a result of the fight between them; however, he claimed he was acting in self-defense. (*Id.* ¶ 6.) The jury was instructed on both first-degree intentional homicide and second-degree intentional homicide, as follows:

> Peter Whyte is guilty of first-degree intentional homicide if [he] caused the death of Suzanne Weiland with the intent to kill and did not actually believe the force used was necessary to prevent imminent death or great bodily harm to himself.
>
> Peter Whyte is guilty of second-degree intentional homicide if [he] caused the death of Suzanne Weiland with the intent to kill, and actually believed the force used was necessary to prevent imminent death or great bodily harm to himself, but his belief was unreasonable.

(*Id.* ¶ 12.) The jury convicted Weiland of second-degree intentional homicide. (*Id.* ¶ 6) The court imposed a sixty-year sentence consisting of forty years' initial confinement and twenty years' extended supervision. (*Id.*)

On direct appeal, Whyte argued that the admission of certain hearsay statements by Weiland violated his right to confrontation. (*Id.* ¶ 7.) The court of appeals affirmed the

3

judgment on October 26, 2010 (*id.*) and the Wisconsin Supreme Court denied review (Docket # 31-8).

Whyte then filed a motion for post-conviction relief in the circuit court raising numerous claims regarding the fact that he was required to wear a stun belt at trial, prosecutorial misconduct, erroneous admission of other-acts evidence, ineffective assistance of trial and appellate counsel, and entitlement to a new trial in the interest of justice. (Docket # 31-12 ¶ 3.) The court of appeals upheld denial of the post-conviction motion on May 12, 2015 (Docket # 31-12) and the Wisconsin Supreme Court denied review (Docket # 31-16). Whyte then filed a *pro se* petition for a writ of habeas corpus in state court alleging ineffective assistance of appellate counsel in his 2009 appeal, which the court of appeals denied on March 31, 2016. (Docket # 31-21.) The Wisconsin Supreme Court again denied review. (Docket # 24.)

Whyte filed a petition for a writ of habeas corpus in this court in May 2012. (Docket # 1.) On October 11, 2012 I stayed the proceedings pending exhaustion of Whyte's claims at the state level. (Docket # 16.) On February 15, 2016, Whyte filed an amended petition. (Docket # 23.) On September 1, 2016, I lifted the stay. (Docket # 27.) Whyte's habeas petition is now fully briefed and ready for resolution.

## STANDARD OF REVIEW

Whyte's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "based on an unreasonable

4

determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

5

Case 2:12-cv-00486-NJ   Filed 07/28/20   Page 5 of 20   Document 57

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

Habeas relief is available only for state court decisions that are contrary to *federal* law; this court may not review whether a state court properly applied its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). "The operative decision under review is that of the last state court to address a given claim on the merits."[1] *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Greene v. Fisher*, 565 U.S. 34 (2011)).

## ANALYSIS

Whyte's amended petition argues that he is entitled to a writ of habeas corpus on four grounds: (1) admission of Weiland's statements at trial violated the Confrontation Clause, (2) the visible use of a stun belt throughout trial violated his constitutional rights, (3) his trial counsel was ineffective, and (4) his appellate counsel was ineffective. (Docket # 23 at 6–9.) In his brief, Whyte argues that the visible use of a stun belt without adequate justification violated his constitutional rights, trial counsel was ineffective, and appellate counsel was ineffective. Whyte does not renew his Confrontation Clause claim in either his opening brief or his reply brief. Accordingly, I deem this claim abandoned and will address the remaining three grounds. *See Duncan v. State of Wis. Dept. Health and Family Servs.*, 166 F.3d 930, 934 (7th

---

[1] There are three operative decisions in this case: (1) the court of appeals' decision of October 26, 2010 adjudicating Whyte's Confrontation Clause claim on direct appeal (Docket # 31-5); (2) the court of appeals' decision of May 12, 2015 adjudicating Whyte's post-conviction motion (Docket # 31-12); and (3) the court of appeals' decision of March 31, 2016 adjudicating Whyte's claim of ineffective assistance of appellate counsel (Docket # 31-21).

Cir. 1999) (explaining that arguments a party fails to develop in its brief are deemed waived or abandoned); *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir. 1990).

1. *Stun Belt Claim*

Whyte argues that the requirement that he use a visible stun belt at trial violated his right to a fair trial, due process, the presumption of innocence, the right to counsel, and the right to participate in his defense. (Docket # 23 at 7–8, Docket # 49 at 16–20.) The Respondent asserts that this claim was procedurally defaulted. I agree.

A federal court may not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* (internal quotation and citation omitted). To conclude that a petitioner has procedurally defaulted a claim, the court "must be convinced that the last state court to consider the question actually relied on [a procedural ground] as the basis for its decision." *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (internal citations omitted). The state court's reliance on a procedural rule therefore must be explicit. *See id.* Furthermore, "the state's procedural rule must be both 'firmly established and regularly followed,'" applied consistently and frequently, and will not be an adequate ground for procedural default "if the prisoner 'could not fairly be deemed to have been apprised of its existence' at the time [he] acted." *Id.* (internal citations omitted).

If a state court does not reach a federal issue because of a state procedural bar, that issue cannot be raised in a writ of habeas corpus to a federal court without a showing of cause and prejudice. *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998) (citing *Wainwright v. Sykes*, 433 U.S. 72, 90–91 (1977)). In some cases, ineffective assistance of counsel may excuse the default if the ineffectiveness rises to the level of a constitutional deprivation. *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990). Additionally, procedural default may be overcome in extraordinary cases where there would otherwise be a deprivation of due process resulting in a fundamental miscarriage of justice. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478 (1986)).

In this case, contrary to Whyte's assertion, the Wisconsin Court of Appeals explicitly disposed of Whyte's stun belt claims on procedural grounds, concluding that he had waived them under Wis. Stat. § 974.06(4) and *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994). (Docket # 31-12 ¶ 4.) The Seventh Circuit has held that the *Escalona-Naranjo* rule is an independent and adequate state procedural ground that forecloses federal habeas review. *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002). Thus, Whyte's stun belt claim is foreclosed unless he establishes cause and prejudice for the default, or establishes that failure to consider the claim would result in a fundamental miscarriage of justice. Whyte does neither but argues that the court of appeals did rule on the merits of the stun belt claims. (Docket # 49 at 10–11.) It did not. It merely considered whether *exceptions* to the procedural bar should apply, which involved some review of the merits, but did not change the underlying fact that the court rejected Whyte's stun belt claim on the basis of the procedural bar. *See Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (citing *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005);

*Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003); *Neal v. Gramley*, 99 F.3d 841, 843–44 (7th Cir. 1996); *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003)).

I conclude that the state court rejected Whyte's stun belt claim on the basis of an independent and adequate state procedural ground, and Whyte has not shown cause for and prejudice resulting from the default that would overcome that bar. Therefore, Whyte is not entitled to habeas relief on the basis of his stun belt claim.

　　2.　　*Ineffective Assistance of Counsel Claim*

Whyte asserts that trial counsel was ineffective for failing to object to the stun belt at trial and for failing to investigate a potential defense, namely that the amount of force Whyte used against Weiland was reasonable under the circumstances.[2] (Docket # 23 at 8, Docket # 49 at 21–31.)  The State argues that this claim is procedurally defaulted. As with the stun belt claim, the Wisconsin Court of Appeals disposed of Whyte's ineffective assistance of counsel claims on procedural grounds, concluding that he had waived them under Wis. Stat. § 974.06(4) and *Escalona-Naranjo*. (Docket # 31-12 ¶ 4.) However, citing to *Page v. Frank*, 343 F.3d 901, 907–09 (7th Cir. 2003), Whyte argues that procedural default should not apply to this claim.

I need not resolve the question of procedural default because even if the claim is not defaulted, Whyte is not entitled to habeas relief because his counsel was not ineffective. To establish ineffective assistance of counsel, Whyte must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy *Strickland's* performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of

---

[2] In his petition, Whyte also mentions counsel's failure to present mitigating evidence at sentencing, but he does not argue this claim in either of his briefs, so I deem it abandoned.

9

professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. Additionally, under Seventh Circuit precedent, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland*'s prejudice test. *Williams v. Washington*, 59 F.3d 673, 682

(7th Cir. 1995) (citing *Montgomery v. Petersen*, 846 F.2d 407, 412 (7th Cir. 1988); *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 958 (7th Cir. 1986)).

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Regarding counsel's failure to object to the requirement that Whyte wear a stun belt at trial, Whyte has not shown prejudice under *Strickland*. Whyte argues that the stun belt affected the jury's perception of him, his ability to perform in-court demonstrations, and his ability to testify effectively due to his fear of being shocked. (Docket # 49 at 14–18.) This is plausible, but Whyte has not shown that there is a reasonable probability that but for the use of the stun belt the verdict would have been different. The jury found Whyte guilty of second-degree rather than first-degree intentional homicide, suggesting that the jury thought the amount of force Whyte used was unreasonable. Whyte has not shown a reasonable probability that absent the stun belt the jury's assessment of the reasonableness of the force he used would have been different. Thus, Whyte is not entitled to habeas relief due to counsel's failure to object to the stun belt.

As for counsel's failure to investigate potential evidence that the amount of force Whyte used was reasonable under the circumstances, Whyte asserts that further investigation would have led counsel to an expert on the use of force and the characteristics of an extremely intoxicated alcoholic. (*Id.* at 21–31.) Whyte points to a lengthy report by a purported such expert, Marc MacYoung. (Docket # 31-14 at 137–169.) Whyte asserts that such an expert

11

"would [have] explain[ed] that a knife injury has no immediate disabling effect, and that contrary to making her easily subdued, Weiland's history and [blood alcohol concentration] would have actually made her more of a threat rendering Whyte's greater size inconsequential." (*Id.*)

Whyte has not shown that failure to locate and call an expert was prejudicial under *Strickland*. The jury heard testimony from multiple witnesses that some individuals, and Weiland specifically, could be physically threatening when extremely intoxicated. A toxicologist testified that some individuals become antagonistic, hostile, and violent when intoxicated. (Trial Day 5 Tr. 153, Docket # 31-29.) A deputy testified that he had encountered people with blood alcohol concentrations exceeding .30 who are capable of attacking. (Trial Day 2 Tr. 77–81, Docket # 31-26.) One acquaintance testified that Weiland was not only functional but violent when intoxicated. (Trial Day 3 Tr. 58–60, 114, 120, Docket # 31-27.) A neighbor testified that Weiland could be aggressive, active, and capable when drunk, and that Weiland had once given Whyte a split lip. (*Id.* at 155–56, 158, 161–62.) According to another neighbor, Weiland became mean around Whyte when drunk, and Weiland had once attacked a neighbor's fiancé when Weiland was "really, really drunk." (Trial Day 4 Tr. 28–30, Docket # 31-28.) In sum, there was specific testimony that Weiland became physically belligerent when very drunk. The jury apparently believed this testimony, finding that Whyte had acted in self-defense in finding him guilty of second-degree rather than first-degree intentional homicide. Thus, Whyte has not shown a reasonable probability that expert testimony explaining that some individuals become aggressive and threatening when drunk would have altered the verdict.

12

Whyte's argument that an expert opinion was necessary to understand the realities of violence and life-or-death struggles would apply to virtually every case where reasonable use of force is an issue, but experts are not categorically required in such cases. The jury did not need an expert to explain that one who is being stabbed by an attacker, as the jury apparently believed Whyte was, is subject to physical and mental stress that affects how he responds. As for expert testimony that knife wounds are not immediately disabling, such that Weiland could have continued to struggle even after she had been stabbed, such testimony would have been at least partially redundant. The toxicologist who performed Weiland's autopsy testified that he could not say whether any one of Weiland's knife wounds would have immobilized her immediately. (Trial Day 5 Tr. 145, Docket # 31-29.)

In sum, Whyte has not shown a reasonable probability that expert testimony would have changed the result of the trial. Accordingly, any deficiency on the part of trial counsel in failing to object to the stun belt or seek an expert opinion was not prejudicial under *Strickland*. Thus, Whyte is not entitled to habeas relief on this claim.

    3.    *Ineffective Assistance of Post-Conviction/Appellate Counsel*

Whyte's petition asserts ineffective assistance of post-conviction/appellate counsel for failing to argue six issues. (Docket # 23 at 9.) In the scheduling order of May 21, 2018, I found that Whyte had not exhausted two of the issues, but allowed Whyte to proceed on the other four: failure to argue (1) the stun belt and ineffective assistance of counsel issues, (2) the involuntariness of Whyte's statements, (3) the improper admission of other-acts evidence, and (4) that the other-acts and *Giles* evidence compelled Whyte to take the stand. (Docket # 41.)

The proper standard for evaluating whether appellate counsel was ineffective on habeas review is the familiar two-pronged analysis of deficient performance and prejudice

enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Counsel's performance is deficient when it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. When the petitioner is challenging the selection of issues presented on appeal, "appellate counsel's performance is deficient under Strickland only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (internal citation omitted). This is because appellate counsel is not required to raise every non-frivolous issue on appeal. *Id.* A petitioner demonstrates the requisite prejudice "only when appellate counsel fails to raise an issue that 'may have resulted in a reversal of the conviction, or an order for a new trial.'" *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) (internal citation omitted). In other words, "there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

      Whyte argues at the outset that the issue appellate counsel did raise—violation of the Confrontation Clause by the admission of statements by Weiland under the doctrine of forfeiture by wrongdoing—was so frivolous as to invoke the rule articulated in *Shaw v. Wilson*: when counsel raises one entirely frivolous argument and rejects another obvious, genuinely arguable claim, that is sufficient to show deficient performance. 721 F.3d 908, 915–16 (7th Cir. 2013). (Docket # 49 at 31.) Whyte argues that appellate counsel's Confrontation Clause argument had been invalidated a year earlier by the U.S. Supreme Court case of *Giles v. California*, 554 U.S. 353 (2008). Whyte is mistaken. *Giles* did not invalidate his Confrontation Clause argument; it strengthened it. *Giles* narrowed the scope of forfeiture by wrongdoing to cases in which the defendant has caused the declarant's unavailability for the purpose of preventing their testimony. Whyte clearly did not cause Weiland's unavailability in order to

14

prevent her from testifying, but in self-defense, so his argument that forfeiture by wrongdoing should not apply was actually *stronger* after *Giles*. Therefore, I decline to assess Whyte's ineffective assistance of appellate counsel claims under the rubric of *Shaw*, and look instead to the familiar *Robbins* standard and ask whether the arguments counsel allegedly should have made were clearly stronger than those counsel actually made.

### 3.1 Procedural Default

The Respondent asserts that several of Whyte's ineffective assistance of appellate counsel claims are procedurally defaulted because the court of appeals decided them on state procedural grounds in Whyte's post-conviction motion. (Answer ¶ 16 n.2, Docket # 31; Docket # 52 at 19–21.)

The court of appeals held that Whyte had failed to establish prejudice from any instance of alleged ineffective assistance of appellate counsel because Whyte's post-conviction motion made only a conclusory allegation of prejudice. (Docket # 31-12 ¶¶ 9–10.) The court noted that under *State v. Allen*, 2004 WI 106, ¶¶ 84–87, 274 Wis. 2d 568, 682 N.W.2d 433, "[m]otions containing only conclusory and legally insufficient allegations that postconviction counsel was ineffective are insufficient to circumvent *Escalona-Naranjo*'s procedural bar." (Docket # 31-12 ¶ 9.) Under Wisconsin law, in a motion seeking post-conviction relief based on a claim of ineffective assistance of counsel, the defendant must tell the court "who would be called as a witness at an evidentiary hearing and what their testimony was likely to prove." *State v. Balliette*, 2011 WI 79, ¶ 3, 336 Wis.2d 358, 805 N.W.2d 334. Where a defendant fails to do so, the trial court may summarily deny the motion without an evidentiary hearing. *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). Here, Whyte stated only that "[a]t a hearing, the defendant will establish that post-conviction counsel's deficient performance

15

prejudiced him." (Docket # 31-12 ¶ 9.) The court of appeals concluded that this was insufficient to show prejudice in order to circumvent *Escalona*'s procedural bar (*id.*), and that it also justified dismissal of the post-conviction motion (*id.* ¶ 10).

Thus, the claims of ineffective assistance of appellate counsel Whyte raised in his post-conviction motion are barred by independent and adequate state procedural grounds. As relevant here, the barred claims include Whyte's ineffective assistance of appellate counsel claims regarding ineffectiveness of trial counsel, the stun belt, and the voluntariness of Whyte's statements. (Docket 31-12 ¶ 6.) Whyte has not shown cause for and prejudice stemming from the default, and therefore he is not entitled to habeas relief on this claim.

Even if these claims were not procedurally defaulted, Whyte would not be entitled to relief on them. As explained above, his stun belt and ineffective assistance of counsel claims were losing arguments, and appellate counsel cannot be ineffective for failing to raise losing arguments. *See Perez v. United States*, 286 F. App'x 328, 331 (7th Cir. 2008) ("Failure to raise a losing argument or pursue a losing motion . . . does not constitute ineffective assistance.") (citing *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001); *United States v. Jackson*, 103 F.3d 561, 575 (7th Cir. 1996)); *see also Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) (performance not deficient for failing to make a futile objection); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004) (where underlying claim is meritless, there is not reasonable probability of a different outcome absent the failure to raise it). Furthermore, although Whyte raises the voluntariness issue in his petition (Docket # 23 at 9), he does not argue it in his brief. Therefore, even were this claim not procedurally defaulted, I would conclude that Whyte had abandoned it.

### 3.2 Other-Acts and Hearsay Evidence

Whyte contends that appellate counsel was ineffective for failing to argue the improper admission of other-acts/hearsay evidence, including testimony that Weiland reported that Whyte treated her abusively and that Whyte had indicated he wanted to end the relationship. (Docket # 23 at 9, Docket # 49 at 37–38.) Whyte argued these grounds in his state habeas petition[3] (Docket # 31-17), and the court of appeals rejected them (Docket # 31-21). The court of appeals explained that Whyte had challenged the other-acts evidence in his initial appeal under the rubric of his right to confront witnesses, and that they had been rejected on the basis of harmless error because of the overwhelming evidence of Whyte's guilt. (*Id.*) The court reasoned that challenging those statements on other grounds would not affect the harmless error analysis. (*Id.*) Additionally, the court explained that the challenged testimony relates to the question of whether Whyte committed *first-degree* intentional homicide, but not to the crime Whyte was actually convicted of: *second-degree* intentional homicide, for using excessive force in self-defense. (*Id.*)

The court of appeals' conclusion is not contrary to or an unreasonable application of *Strickland* or *Robbins*. Even if appellate counsel had challenged the statements as the improper admission of other-acts evidence rather than under the Confrontation Clause, the prejudice analysis would have been the same. None of the statements Whyte challenged affected the analysis of whether the amount of force Whyte used was reasonable, especially in light of the evidence about the size disparity between Whyte and Weiland, Weiland's intoxication, and

---

[3] Whyte's state habeas petition also argued the involuntariness of Whyte's statements to police. (Docket # 31-17 at 25–37.) The court of appeals noted, as I did above, that this argument was rejected on procedural grounds in Whyte's post-conviction motion. (Docket # 31-21 at 2–3.) The court of appeals further noted that the circuit court had made detailed findings establishing that Whyte's statements were, in fact, voluntary.

17

the number of potentially fatal stab wounds Weiland suffered. (Docket # 31-5 ¶ 13.) In light of that evidence, the court concluded that it was "wholly inconceivable that a jury could find that any subjective belief Whyte had regarding the amount of force used was reasonable," and that because "the challenged statements were inconsequential to the evidence of Whyte's guilt, any error in their admission does not undermine our confidence in the conviction." (*Id.*) Because Whyte has failed to show that this conclusion was unreasonable, he is not entitled to habeas relief on this claim.

Regarding Whyte's argument that appellate counsel should have cited *Giles* for the proposition that the doctrine of forfeiture by wrongdoing would not apply in this case, the court of appeals held that the same harmless error ruling would apply to any such argument. Weiland's out-of-court statements would only have been relevant to first-degree intentional homicide; they were largely or entirely irrelevant to the crime the jury actually convicted Whyte of, using an unreasonable amount of force in self-defense. In other words, the *Giles* argument was a losing one, and therefore not clearly stronger than the Confrontation Clause argument appellate counsel actually made. For these reasons, Whyte is not entitled to habeas relief on this claim.

## CONCLUSION

The Wisconsin Court of Appeals rejected Whyte's claims of constitutional error, and Whyte has failed to show that the court unreasonably applied Supreme Court precedent to the facts of his case or unreasonably determined the facts in light of the evidence presented. Thus, Whyte's petition for a writ of habeas corpus is denied.

# CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Jurists of reason would not find it debatable that Whyte is not entitled to habeas relief. Thus, I will deny Whyte a certificate of appealability. Of course, Whyte retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Whyte's amended petition for a writ of habeas corpus (Docket # 23) is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of July, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge